**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THRU TUBING SOLUTIONS, INC., | No. 4:23-CV-01476 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| ANDREW ROBBINS and WORKOVER SOLUTIONS, INC., | |
| Defendants. | |

**MEMORANDUM OPINION**

**DECEMBER 11, 2023**

## I.    BACKGROUND

On September 6, 2023, Plaintiff, Thru Tubing Solutions, Inc., ("TTS"), filed a four-count complaint against the Defendants, Andrew Robbins and his current employer, Workover Solutions, Inc. ("WOS"), seeking injunctive relief and monetary damages. The Court subsequently granted Plaintiff's Motion for a Temporary Restraining Order on September 15, 2023. On October 5, 2023, the Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[1] and *Ashcroft v. Iqbal*,[2] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[4]

### B.    Motion for Lack of Subject Matter Jurisdiction Standard

Under Federal Rule of Civil Procedure 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."[5]  The first step in

---

[1]    550 U.S. 544 (2007).
[2]    556 U.S. 662 (2009).
[3]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[4]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[5]    *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

evaluating a 12(b)(1) motion is to address whether it presents a "facial" or "factual" attack on the plaintiff's claims.[6] The "distinction is significant because, among other things, it determines whether [I] accept as true the non-moving party's facts as alleged in its pleadings."[7]

A facial challenge contests the court's subject-matter jurisdiction "without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'"[8] A factual challenge, by contrast, asserts that the underlying facts of the case do not support jurisdiction.[9] When considering a factual challenge, a court may consider evidence outside the pleadings.[10] Further, the plaintiff bears the burden of contesting a factual challenge and proving that jurisdiction exists.[11]

## C.   Facts Alleged in the Complaint

TTS provides "specialized downhole services, equipment, and technology to customers in the oilfield services industry."[12] As a Tool Specialist for Plaintiff, Andrew Robbins "developed intimate knowledge of TTS's [c]onfidential [i]nformation, including" the company's Standard US Price Book; the "identity and

---

[6]   *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citation omitted).

[7]   *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 625, 632 (3d Cir. 2017) (citation omitted).

[8]   *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 392 n.3 (3d Cir. 2006)).

[9]   *Aichele*, 757 F.3d at 358.

[10]   *Id.*

[11]   *Davis*, 824 F.3d at 346.

[12]   Doc. 1 (Compl.) ¶ 16.

preferences of key customer contacts and decision-makers;" its project, design, and tool specifications; the "[p]roper use of SlicFrac;" and "[i]nformation on [its] patented job methods."[13] Robbins also received a laptop "pre-loaded" with TTS's confidential information.[14] Overall, this information would be very beneficial to its competitors if disclosed.[15]

### 1. Employee Obligations Regarding Confidentiality

To "ensure [that this information] remains secret and confidential," Plaintiff restricts access to it on an "as-needed basis" and operates its offices and online systems as "controlled environments."[16] Employees are also required to sign confidentiality agreements.[17] The confidentiality agreement signed by Robbins (the "Robbins Agreement") limits his "ability, both during his employment and for the twelve months following the end of his employment with TTS, to: (a) disclose TTS's Company Confidential Information; and (b) solicit TTS's customers or employees following his resignation."[18] Also included in this agreement is a "Governing Law Provision" that states:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Oklahoma, without reference to principles of conflicts of laws. The parties agree venue will be proper in any state or federal court in Oklahoma County, Oklahoma.[19]

---

[13]   *Id.* ¶¶ 18, 32.
[14]   *Id.* ¶ 34.
[15]   *Id.* ¶¶ 20-21.
[16]   *Id.* ¶¶ 22-25.
[17]   *Id.* ¶ 26.
[18]   *Id.* ¶ 45.
[19]   Doc. 1 (Compl.), Ex. 1 (The Agreement) ¶ 20.5.

### 2. Robbins' Resignation and Suspected Violations of the Confidentiality Agreement

"Robbins unexpectedly and abruptly" resigned on July 5, 2023, and WOS, a direct competitor of TTS, hired Robbins shortly after July 10, 2023.[20] Plaintiff reminded Robbins of his confidentiality and non-solicitation obligations through a written letter on July 13, 2023.[21] As a WOS employee, Robbins "could—and, upon [Plaintiff's] information and belief, intend[s] to—trade on [his] knowledge" and TTS's customer network "by soliciting these customers" on behalf of WOS.[22] TTS also believes that Robbins has solicited "at least one" of its current employees.[23]

After an internal investigation, WOS concluded it did not possess Plaintiff's confidential information.[24] Despite this, TTS believes Robbins downloaded its confidential information onto two flash drives before his last day of employment. [25] These files fit into three broad categories: "(1) contract and other project and site information regarding TTS's customers and prospective customers; (2) information related to TTS's proprietary tools and processes, including tool and processes specifications and drawings; and (3) information relating to TTS's general pricing structure, including customer specific pricing and discounts."[26] For example,

---

[20]   Doc. 1 (Compl.) ¶¶ 18, 47, 51.
[21]   *Id.* ¶ 54.
[22]   *Id.* ¶ 38.
[23]   *Id.* ¶¶ 57, 59.
[24]   *Id.* ¶ 62.
[25]   *Id.* ¶¶ 66, 72.
[26]   *Id.* ¶ 67.

Robbins downloaded customer specific project information, the 2021 US Price Book, and a folder labeled "2022 Quotes."[27] He chose these files "for their value to him in his post-TTS endeavors."[28] Plaintiff further alleges that Robbins and WOS initially retained the flash drives before eventually turning them over to counsel.[29] Forensic analysis of these devices by a third-party is ongoing.[30]

### D.    Analysis

In support of their motion, the Defendants argue that Count I must be dismissed because of the forum selection clause in the Robbins Agreement; that Plaintiff has failed to properly allege the misappropriation of its trade secrets under the Defend Trade Secrets Act ("DTSA") and Pennsylvania Uniform Trade Secrets Act ("PUTSA"); that TTS cannot show any interference by WOS with the Robbins Agreement; and that the Court lacks subject matter jurisdiction.

### 1.    Forum Selection Clause

To begin, it must be determined what impact the forum selection clause in the Robbins Agreement's "Governing Law Provision" has on Plaintiff's contract claims. The relevant portion of this provision states: "The parties agree venue will be proper in any state or federal court in Oklahoma County, Oklahoma."[31] The Court "notes

---

[27]  *Id.* ¶¶ 68-71.
[28]  *Id.*
[29]  *Id.* ¶ 76.
[30]  *See* Doc. 27 (Request for Continuance of Preliminary Injunction Hearing); Doc. 28 (Letter Responding to Plaintiff's Request for Continuance of Preliminary Injunction Hearing).
[31]  Doc. 1 (Compl.), Ex. 1 (The Agreement) ¶ 20.5.

that the Defendants do not make a motion to transfer this case," but instead "move to dismiss this matter pursuant to Rule 12(b)(6)."[32] A Rule 12(b)(6) dismissal is "an acceptable means of enforcing" a forum selection clause when "the clause allows for suit in either a state or federal forum."[33] Since "the function of Defendants' motion is clearly a dismissal based on *forum non conveniens*" and TTS has "not challenged Defendants' use of Rule 12(b)(6)[,]" the "Court will decide the motion pursuant to Rule 12(b)(6)."[34] "However, the Court alternatively views the motion as one to dismiss pursuant to the *forum non conveniens* doctrine, without reference to Rule 12(b)(6)."[35]

### a. Distinction Between Mandatory and Permissive Forum Selection Clauses

Two types of forum selection clauses exist: mandatory and permissive.[36] A "mandatory forum selection clause clearly indicates that venue is proper only in the selected forum, while a permissive forum selection clause merely authorizes venue in the selected forum."[37] The enforcement of forum selection clauses is governed by federal law, but "the question of enforceability is analytically distinct from the issue

---

[32] *Besthoff v. Mitta*, Civ. A. No. 17-1449, 2018 U.S. Dist. LEXIS 118308, at *15 (D.N.J. July 16, 2018).
[33] *Podesta v. Hanzel*, 684 F. App'x 213, 216 (3d Cir. 2017).
[34] *Besthoff*, 2018 U.S. Dist. LEXIS 118308, at *16.
[35] *Id.*
[36] *See e.g.*, *Wall v. Corona Capital, LLC*, 756 F. App'x 188, 191 (3d Cir. 2018).
[37] *Campanini v. Studsvik, Inc.*, Civ. A. No. 08-5910, 2009 U.S. Dist. LEXIS 28908, at *9 (E.D. Pa. Apr. 6, 2009).

of interpretation."[38] State law is first used to interpret the contract.[39] "Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play."[40]

### b.  Choice of Law Analysis to Determine State Law

The Supreme Court of the United States held in *Klaxon Co. v. Stentor Electric Manufacturing Co.*[41] "that a federal court sitting in diversity must apply the choice of law rules of the forum state when questions 'arise in federal court but whose determination is not a matter of federal law.'"[42] "However, it is unclear if this holding extends to circumstances in which a court derives its jurisdiction from a federal question."[43] "[G]iven the absence of an overriding federal interest, this Court will [still] apply *Klaxon*" despite this uncertainty.[44]

Consequently, if a true conflict exists between Oklahoma and Pennsylvania law, the Court will conduct a Pennsylvania choice of law analysis.[45] According to conflicts of law principles, laws that ultimately "would produce the same result"

---

[38]  *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). The Third Circuit cited *Weber* favorably when formally adopting this approach in *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 182 (3d Cir. 2017).

[39]  *See e.g.*, *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 131 n.6 (D.N.J. 2020) (citing *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) *and Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183-85 (3d Cir. 2017)).

[40]  *Weber*, 811 F.3d at 770.

[41]  313 U.S. 487 (1941).

[42]  *Carickhoff v. Goodwin (In re Decade, S.A.C., LLC)*, 612 B.R. 24, 37 (Bankr. D. Del. 2020) (quoting *Klaxon*, 313 U.S. at 496).

[43]  *Id.*

[44]  *Id.*

[45]  *See Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

only present a "false conflict" and "the Court should avoid the" choice of law issue altogether.[46] The present situation is a "false conflict" because the relevant language creates a permissive forum selection clause under both Oklahoma and Pennsylvania law.[47] Standing in contrast to this permissive forum selection clause is the exclusive choice of law subsection of the "Governing Law Provision."[48] It "is clear that the parties knew how to draft a mandatory clause" and instead "simply chose not to do so [when] drafting this forum selection clause."[49]

### c.    Traditional *Forum Non Conveniens* Analysis

District courts "in the Third Circuit have declined to extend *Atlantic Marine's* strong presumption of enforcing forum selection clauses to instances where the forum selection clause is permissive."[50] Instead, a "traditional *forum non conveniens*

---

[46] *Id*.

[47] "Oklahoma and federal law regarding forum selection clauses are substantially similar" to the point courts have not performed choice of law analyses when faced with a choice between these two options. *Triple "S" Operating Co., LLC v. Ezpawn Okla., Inc.*, 10-CV-0328, 2010 U.S. Dist. LEXIS 65524, at *6 (N.D. Okla. June 30, 2010). Under federal law, language such as "shall" or "must" indicates a mandatory forum selection clause. *See e.g.*, *Wall St. Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82 (3d Cir. 2006). *See also Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG*, 440 F. Supp. 2d 357 (D.N.J. 2006) (finding "will be" to be indicative of a permissive clause). Pennsylvania law uses a similar approach to that taken by federal law when interpreting forum selection clauses. *See Castle Co-Packers, LLC v. Busch Mach., Inc.*, No. 23-459, 2023 U.S. Dist. LEXIS 145000 (W.D. Pa. Aug. 18, 2023).

[48] *See* Doc. 1 (Compl.), Ex. 1 (The Agreement) ¶ 20.5.

[49] *1901 Gateway Holdings, LLC v. CentiMark Corp.*, 3:21-CV-2607, 2022 U.S. Dist. LEXIS 154787, at *16-17 (N.D. Tex. Aug. 29, 2022).

[50] *N. Am. Communs., Inc. v. Eclipse Acqui Inc.*, Civ. A. No. 3:17-167, 2018 U.S. Dist. LEXIS 15518, at *19-20 (W.D. Pa. Jan. 31, 2018).

analysis"[51] is conducted using the following factors: (1) whether "an adequate alternative forum exists to hear the case[;]" (2) "the amount of deference [given to] plaintiff's choice of forum[;]" and the (3) private and (4) public interest factors.[52] "The defendant[s] bear[] the burden of persuasion at each stage in the analysis, and a district court abuses its discretion if it fails to hold the defendant[s] to [their] burden."[53] Since the "Defendants have not provided any briefing on the *forum non conveniens* factors, [they] have failed to meet their burden."[54] "In short, even if the [courts in Oklahoma County are] an adequate venue to hear this case, Defendants have made no showing to overcome the 'strong presumption of convenience [that] exists in favor of a domestic plaintiff's chosen forum.'"[55]

Accordingly, Plaintiff is able proceed in the present forum, and there is no need to reach the Defendants' argument that WOS is a "closely related party" for purposes of the forum selection clause.

## 2.     Trade Secrets Claims

The Defendants next challenge Plaintiff's DTSA and PUTSA trade secret claims. Both statutes "require (1) sufficient identification of a trade secret and (2)

---

[51]   *Ace Am. Ins. V. First Call Envtl., LLC*, 5:21-cv-02331, 2021 U.S. Dist. LEXIS 167517, at *4 (E.D. Pa. Sept. 3, 2021) (quoting *Agri-Marketing, Inc. v. ProTerra Sols., LLC*, 5:17-CV-00627, 2018 U.S. Dist. LEXIS 47792, at *3 (E.D. Pa. Mar. 20, 2018)).

[52]   *Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 295 (3d Cir. 2010).

[53]   *Agri-Marketing*, 2018 U.S. Dist. LEXIS 47792, at *11.

[54]   *Id.*

[55]   *Id.* at *11-12 (quoting *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)). *See* Doc. 26 (Brief in Support of Defendants' Motion to Dismiss) at 9-11; Doc. 33 (Reply Brief in Support of Defendants' Motion to Dismiss) at 12-14.

proof of misappropriation of that trade secret."[56] For the DTSA, the trade secret must also be "related to a product or service used in, or intended for use in, interstate or foreign commerce."[57]

### a.    Trade Secret Information

Under the DTSA and PUTSA, "a trade secret is information that: '(a) the owner has taken reasonable means to keep secret; (b) derives independent economic value, actual or potential, from being kept secret; (c) is not readily ascertainable by proper means; and (d) others who cannot readily access it would obtain economic value from its disclosure or use.'"[58] At the motion to dismiss stage, Plaintiff must identify the misappropriated trade secrets "with enough specificity to place [the Defendants] on notice of the bases [of] the claim being made against" them.[59]

Robbins downloaded three main types of information: "(1) contract and other project and site information regarding TTS's customers and prospective customers; (2) information related to TTS's proprietary tools and processes, including tool and processes specifications and drawings; and (3) information relating to TTS's general pricing structure, including customer specific pricing and discounts."[60] Plaintiff

---

[56] *PetroChoice Holdings, Inc. v. Orobono*, 2:19-CV-06152, 2022 U.S. Dist. LEXIS 7380, at *6 (E.D. Pa. Jan. 14, 2022).

[57] *Id.*

[58] *Id.* at *7.

[59] *IQVIA, Inc. v. Breskin*, Civ. A. No. 22-2610, 2023 U.S. Dist. LEXIS 47174, at *12 (E.D. Pa. Mar. 20, 2023).

[60] Doc. 1 (Compl.) ¶ 67.

highlights the "TTS US Price Book 2021," a folder entitled "2022 Quotes," and customer information as specific examples of these files.[61]

For the first category, Plaintiff provides a general description of the "contract and other project and site information regarding TTS's customers and prospective customers."[62] Customer lists can qualify for trade secret protection, especially when the employee at issue is joining a competitor in an identical role, if they are not "readily ascertainable" by public means.[63] The Defendants have set forth slightly contradictory positions at different points in this litigation on whether TTS's customers can be easily identified,[64] but "there is no evidence" to suggest that competitors have access to TTS's "historic" customer relationship data.[65] Further, "terms of specific customer accounts" can be trade secrets.[66] Including contract and project information in this category helps grant it trade secret protection since this information is also closely guarded by Plaintiff and valuable to its competitors.[67]

The second category, TTS's "proprietary tools and processes," has not been sufficiently identified. The Court uses the allegations in Paragraph 32 of the

---

[61] *See id.* ¶¶ 67-69.

[62] *Id.* ¶ 67.

[63] *Pittsburgh Logistics Sys. v. LaserShip, Inc.*, 2:18-CV-1382, 2019 U.S. Dist. LEXIS 98470, at *33-34 (W.D. Pa. June 12, 2019).

[64] *See* Doc. 26 (Brief in Support of Motion to Dismiss) at 16; Doc. 22 (Defendants' Letter in Response to Plaintiff's Oct. 4 Letter) at 5.

[65] *Crown Coal & Coke Co. v. Compass Point Res., LLC*, Civ. A. No. 07-1208, 2009 U.S. Dist. LEXIS 26556, at *20-21 (W.D. Pa. Mar. 31, 2009).

[66] *Deman Data Sys., LLC v. Schessel*, 4:13-mc-00520, 2014 U.S. Dist. LEXIS 5728, at *7 (M.D. Pa. Jan. 16, 2014).

[67] *See* Doc. 1 (Compl.) ¶ 66.

Complaint as a guide for the material in this category.[68] To properly plead this category as a trade secret, this information must be distinguished from that which is "generally known within the trade" or connected to specific products and drawings.[69] TTS has done neither of these options. Although requiring a plaintiff to disclose "detailed descriptions of trade secrets in a public complaint" would "likely defeat the entire purpose of attempting to protect those trade secrets in the first place," TTS must do more than include vague, general descriptions of tools and processes.[70]

Finally, the Defendants contend that the information "relating to TTS's general pricing structure," in particular the 2021 US Price Book and 2022 Quotes, is "obviously stale" and "outdated."[71] Other courts have concluded that "costing and pricing information of an employer's product or services" are trade secrets, making this unsupported assertion unpersuasive.[72] This conclusion is reinforced by TTS's averments that it has taken steps to preserve the confidentiality of this information[73] and the value this information would provide to third parties, especially

---

[68]  *Id.* ¶ 32.

[69]  *Herley Indus. v. R Cubed Eng'g. LLC*, 5:20-CV-02888, 2021 U.S. Dist. LEXIS 11949, at *14-16 (E.D. Pa. Jan. 22, 2021).

[70]  *Digital Assur. Certification, LLC v. Pendolino*, 6:17-CV-72, 2017 U.S. Dist. LEXIS 230107, at *4 (M.D. Fla. Sept. 27, 2017). *See also Herley*, 2021 U.S. Dist. LEXIS 11949, at *11.

[71]  Doc. 26 (Defendants' Brief in Support of Motion to Dismiss) at 13.

[72]  *Robson Forensic, Inc. v. Shinsky*, 5:22-CV-1309, 2022 U.S. Dist. LEXIS 73661, at *12 (E.D. Pa. Apr. 22, 2022) (quoting *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 706 (E.D. Pa. 2014)).

[73]  *See* Doc. 1 (Compl.) ¶¶ 23-27.

competitors.[74] Therefore, this pricing information qualifies as a protectable trade secret.

### b.    Misappropriation of Trade Secrets

Because some trade secrets have been identified, it must be determined whether Plaintiff has properly alleged misappropriation. Robbins and WOS will be evaluated individually for this section.

### 1.    Definition of Misappropriation

Misappropriation is "the 'acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;' or the 'disclosure or use' of a trade secret without the consent of the owner."[75] "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."[76] Misappropriation by acquisition occurs "only where the initial acquisition is improper."[77] Use, on the other hand, "encompasses all the ways one can take advantage of trade secret information to obtain economic benefit, competitive advantage, or other commercial value."[78]

---

[74]  *Id.* ¶¶ 68-69.
[75]  *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 674 (E.D. Pa. 2018).
[76]  *PetroChoice Holdings*, 2022 U.S. Dist. LEXIS 7380, at *10 n. 6.
[77]  *Id.* at *10 n. 8 (quoting *Herley*, 2021 U.S. Dist. LEXIS 195882, at *6).
[78]  *Id.* at *10 n. 7 (quoting *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021)).

## 2.    Misappropriation by Robbins

Improper acquisition occurs "when a defendant agreed to abide by a confidentiality agreement but 'impermissibly'" gained personal access to the trade secrets in "'violation of [p]laintiff's policies and confidentiality agreement.'"[79] Robbins did exactly that.[80] The "fact that [Robbins may have been] privy to the information as a [TTS] employee and [may have been able to] use the information in his capacity as such is inconsequential" as he "acquired [this information] in his personal capacity by improper means."[81]

## 3.    Misappropriation by WOS

Plaintiff alleges that WOS knew Robbins was subject to a confidentiality agreement when he was hired and that he possessed confidential TTS knowledge and information.[82] Further, TTS contends that WOS knew that this confidential information provided it with a competitive advantage and that it had been transferred at some point to a WOS computer.[83] "These allegations are sufficient, though barely so, at this stage of the litigation to permit a reasonable and plausible inference that [Robbins] wrongfully acquired [TTS's] information for [WOS's] benefit, that

---

[79]   *Shrink Packaging Sys. Corp. v. Kist*, 22-CV-04967, 2023 U.S. Dist. LEXIS 155103, at *20 (D.N.J. Sept. 1, 2023).

[80]   *See* Doc. 1 (Compl.) ¶¶ 67-73.

[81]   *Shrink Packaging Sys. Corp.*, 2023 U.S. Dist. LEXIS 155103, at *21.

[82]   *See* Doc. 1 (Compl.) ¶¶ 47-54. *See also Elite Transit Solutions v. Cunningham*, Civ. A. No. 20-1549, 2021 U.S. Dist. LEXIS 232910, at *19 (W.D. Pa. Dec. 6, 2021), *report and recommendation adopted by Elite Transit Solutions, LLC v. Cunningham*, Civ. A. No. 20-1549, 2022 U.S. Dist. LEXIS 46055 (W.D. Pa. Mar. 15, 2022).

[83]   *Id. See also* Doc. 1 (Compl.) ¶¶ 55-67, 76-79, 81-84.

[WOS] was aware []he had done so, and that [WOS] retained both the benefit of that information and the information itself for its own eventual use" before turning over the relevant devices to its counsel.[84]

### c.    DTSA's Interstate Requirement

The DTSA's interstate or foreign commerce requirement has also been met as TTS's trade secret information relates to its products that are used "around the world."[85]

### d.    Harm Suffered by TTS

Because TTS has adequately alleged the misappropriation of its trade secrets, it has established harm.[86] As a result, Plaintiff has sufficiently pled its trade secret claims under the DTSA and PUTSA against both Defendants.

### 3.    Tortious Interference with Contract Claim

TTS's claim for tortious interference with contract is premised on WOS's alleged interference with Robbins' post-employment non-solicitation and non-disclosure obligations.[87] The elements of this cause of action are: "(1) the existence of a contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing

---

[84]  *Elite Transit Solutions*, 2021 U.S. Dist. LEXIS 232910, at *19.
[85]  Doc. 1 (Compl.) ¶ 16.
[86]  *See e.g.*, *Thanoo*, 999 F.3d at 913-914.
[87]  The non-compete included in the Robbins Agreement is unenforceable under Oklahoma law. *See e.g.*, *TruGreen Ltd. P'ship v. Okla. Landscape, Inc.*, 526 F. Supp. 3d 1080 (N.D. Okla. Mar. 17, 2021).

relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct."[88]

TTS is unable to establish the fourth element. Unlike a trade secret claim where misappropriation alone establishes harm, Plaintiff is required to assert "actual damages that resulted from the defendant's conduct, and those damages must flow from the loss of the benefits of the contract or consequential, emotional, or reputational losses."[89]  Damages have been found in similar cases in this Circuit when the company identified specific customer relationships impacted by the interference to provide factual support for its general allegations of harm.[90] TTS has not identified any actual impact on its customer relationships and instead just contends that it is threatened with that harm.[91] Since TTS is unable to prove this element, there is no need to reach WOS's "fact-intensive" argument that it has not taken purposeful, improper actions.[92] Count IV of the Complaint is therefore dismissed, but leave to amend will be provided to address this issue.

---

[88]   *Skiff re Business, Inc. v. Buckingham Ridgeview, LP*, 991 A.2d 956, 966 (Pa. Super. Ct. 2010).
[89]   *E. Frank Hopkins Seafood, Co. v. Olizi*, 2:17-CV-01558, 2017 U.S. Dist. LEXIS 92819, at *10 (E.D. Pa. June 15, 2017).
[90]   *See e.g.*, *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 504 (E.D. Pa. 2021).
[91]   *See* Doc. 1 (Compl.) ¶¶ 57, 76, 79, 92-94.
[92]   *E. Frank Hopkins Seafood, Co.*, 2017 U.S. Dist. LEXIS 92819, at *8.

### 4.      Subject Matter Jurisdiction

Finally, the Defendants contend that this Court lacks subject matter jurisdiction to hear this case. Because the Court declined to dismiss Plaintiff's DTSA claim, federal question jurisdiction is present under 28 U.S.C. § 1331, and supplemental jurisdiction exists under 28 U.S.C. § 1367 as the state law claims arise from the same "common nucleus of operative facts" as the DTSA claim and "would ordinarily be expected to" be tried "in one judicial proceeding."[93]

Even if that were not the case, the Court concludes that the requirements of diversity jurisdiction are also satisfied. The Defendants only challenge TTS's ability to meet the requisite amount in controversy. Plaintiff bears the burden of persuasion on this issue, but this burden "is not especially onerous" and is satisfied "'if the claim is apparently made in good faith.'"[94] "An amount in controversy is considered to have been claimed in 'good faith' unless it can be shown 'to a legal certainty that the claim is really for less than the jurisdictional amount.'"[95]

The Complaint includes allegations that Robbins has solicited at least one TTS employee and that the Defendants have misappropriated trade secret information.

---

[93] *Freedom Mortg. Corp. v. Fitzpatrick*, 1:20-CV-05872, 2021 U.S. Dist. LEXIS 8179, at *8 (D.N.J. Jan. 15, 2021).

[94] *Mapp v. Westmoreland Cty.*, Civ. A. No. 2:22-718, 2022 U.S. Dist. LEXIS 131146, at *6 (W.D. Pa. July 25, 2022) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016)).

[95] *Abira Med. Labs., LLC v. Karim*, Civ. A. No. 20-4317, 2022 U.S. Dist. LEXIS 1684, at *5-6 (E.D. Pa. Jan. 5, 2022) (quoting *State Farm Mut. Auto Ins. Co. v. Powell*, 87 F.3d 93, 96 (3d Cir. 1996)).

"Moreover, the complaint requests multiple kinds of injunctive relief[,]"[96] including preventing Robbins from violating his contractual obligations and ordering the return of all "documents, information, and devices" to Plaintiff.[97] With these allegations and the requested relief in mind, the Court cannot conclude to a legal certainty that the jurisdictional amount in controversy has not been met.

## III.   CONCLUSION

For the reasons discussed above, Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied and the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is granted in part and denied in part.

"The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[98] But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[99] As such, Plaintiff will be given fourteen days from today's date to address the issues with Count IV of the Complaint.  If no amended complaint is filed, that count will be subject to dismissal with prejudice.

---

[96] *Pet360, Inc. v. Schinnerer*, Civ. A. No. 11-5974, 2012 U.S. Dist. LEXIS 79174, at *8 (E.D. Pa. June 6, 2012).

[97] Doc. 1 (Compl.) ¶¶ 97, (c).

[98] *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

[99] *Id.* (quoting Fed. R. Civ. P. 15(a)).

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge